CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 28, 2024
LAURA A. AUSTIN, CLERK
BY:      /s/T. Taylor
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **JEREMY DEFOUR**, | ) | |
| Plaintiff, | ) | Case No. 7:22cv00703 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **R. WHITE**, et al., | ) | By:  Pamela Meade Sargent |
| Defendants. | ) | United States Magistrate Judge |

Jeremy DeFour, ("DeFour"), a Virginia Department of Corrections, ("VDOC"), inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983, alleging violation of his First Amendment, Eighth Amendment and Fourteenth Amendment rights by the defendants, as well as violation of his rights under the Prison Rape Elimination Act, ("PREA"), 34 U.S.C. §§ 30302-30309, and the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq*. Following notice pursuant to 28 U.S.C. § 636(c), all parties filed written consent to the exercise of jurisdiction in this case by a magistrate judge. Thereafter, pursuant to court order, (Docket Item No. 22), the case was transferred to the undersigned magistrate judge to handle the proceedings herein, including dispositive orders, pursuant to 28 U.S.C. § 636(c)(1). The defendants then filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket Item No. 26) ("Motion to Dismiss"), to which DeFour has responded, (Docket Item No. 35) (Plntf's Resp. in Opp. to Def. Mot. to Dismiss). Upon review of the pleadings, the court will grant the Motion to Dismiss all claims against defendants Hall, Barnette, Miller, White, Blevins, King, Holloway, Manis, Robinson, Clarke, Meade, Haymes, Stanley and Counts. However, DeFour has alleged sufficient facts, if shown to be true, to support (1) the claim against Bentley for filing a false

retaliatory disciplinary charge against DeFour, (2) the claim against Hearing Officer Adams for a retaliatory adverse ruling against DeFour on Bentley's disciplinary charge, (3) a claim against Shirks for filing a false retaliatory disciplinary against DeFour, and (4) the claim against Scott for sexual assault in violation of the Eighth Amendment.

## I.  Background

As alleged by DeFour, he arrived at Red Onion State Prison, ("Red Onion"), on September 13, 2022.  Several unidentified staff members told him that he would have a difficult time at Red Onion because he had a reputation for filing lawsuits and complaints against officers. (Compl. at ¶ 22.)

Upon arrival at Red Onion, DeFour was held in the most restrictive segregation for one month.  While in segregation, "several days" each week he was denied meals, showers and recreation.  He was not given sufficient clean clothes, nor was he provided adequate cleaning supplies to remove excrement from his toilet and sink.  (Compl. at ¶ 50.)  DeFour identifies Scott and Hall as the officers who denied him meals, showers, and recreation, and he filed grievances about their behavior. (Compl. at ¶ 23.)  He further states that Officers Scott and Barnette made several derogatory and sexually harassing comments towards him, including threatening to let a "K9 f*** [him] in the ass" when he got to general population. (Compl. at ¶ 24.) DeFour immediately filed complaints.

On September 19, 2022, Sgt. Bentley, Unit Manager Miller and an unidentified supervisor approached DeFour's cell.  Bentley and the unidentified person turned off their body cameras, and then Bentley told DeFour that if he continued complaining and writing up Red Onion staff members, he would "get [his] ass beat real good and [would] be lucky to make [it] off Red Onion alive." (Compl.

at ¶ 25.)  While Bentley was speaking, Miller nodded his head, and then Miller added, "you're on Red Onion now, this ain't Buckingham, you'll see." (Compl. at ¶ 26.)  DeFour responded by saying he would write them up for threatening him, and Bentley then wrote a false disciplinary charge against DeFour for threatening Miller with bodily harm.  (Compl. at ¶¶ 26–27.)

A few days later, Miller and Assistant Warden Blevins were making rounds, and DeFour reported to Blevins that Bentley had violated body camera policy by turning off his camera during rounds and that Bentley and Miller had threatened him. Miller interjected, telling DeFour to stop complaining or he was "gonna have a real [rough] ride on Red Onion," and that no matter who he complained to, "no one's going to help you." (Compl. at ¶¶ 28–29.)  DeFour also filed a grievance against Bentley for turning off the body camera, but Major King and Warden White returned the grievance as unfounded, saying the Bentley did not have to have his camera on, because his rounds were over and DeFour was not being disruptive.

At the hearing on his disciplinary charge for threatening Miller, the hearing officer, Adams, refused to allow Bentley's camera footage into evidence, which would have shown that Bentley had turned it off.  Defour alleges Adams was biased against DeFour and found him guilty, even though he had presented Bentley's grievance response, acknowledging that he cut the camera off before talking to DeFour, and a later affidavit in which Bentley allegedly swore under oath that he did not cut the body camera off.  DeFour complained to Warden White that Adams was biased. Some days later, Adams told DeFour that the sooner he realized where he was, the easier it would be on him.

DeFour asserts that "staff" doubled down on not feeding him, allowing showers or giving him his medication because of his continued complaints about his treatment.  DeFour complained to Major King about being deprived of meals, showers, and medication, and King responded "good." (Compl. at ¶ 44.)

On September 28, 2022, Blevins, Miller, Bentley and other unidentified officers approached another inmate's cell, turned off their body cameras and took turns threatening that inmate. DeFour called out that he was going to report them for harassing the other inmate. Miller pointed at DeFour and told an unidentified supervisor to make sure DeFour did not eat that day. At lunch, rather than giving him a bag with his sealed religious diet, an unidentified corrections officer gave him a bag of trash instead of food.

On October 3, 2022, DeFour alleges that Officer Scott, after "weeks" of sexually harassing DeFour, squeezed his buttocks and said his cheeks were soft and sweet. (Compl. at ¶ 46.) DeFour reported this event to Intel Officers Stanley and Shirks and asked to speak to the Special Investigations Unit, ("SIU"), to press charges. Allegedly in violation of policy, they refused to notify SIU of the reported sexual assault. DeFour then filed a complaint against them for failing to notify SIU. Shirks then filed a charge against DeFour for filing a false charge against Officer Scott. In his report, Shirks stated that the camera footage established that DeFour's assault allegation was untrue and that the PREA analyst, defendant Counts, had reviewed the film footage and approved charging DeFour with making a false report.

DeFour alleges that King, Miller and Bentley walked past his cell on October 13, 2022, and Bentley and King turned of their cameras and returned to his cell. King reportedly told DeFour, "You better drop your complaints against Bentley, Scott, and Miller, or you know what will happen." (Compl. at ¶ 54.) When DeFour replied that he had already initiated an investigation against King, King responded, "I run sh** in this whole region, the investigator, hearings officer, even the warden follows my lead." (Compl. at ¶ 55.) As an afterthought, King mentioned the grievance coordinator, Meade, as someone who also would follow his lead, then he smiled and walked away with Bentley and Miller.

Throughout this one-month timeframe, Defour claims that defendant Meade repeatedly refused to intake grievances from him.  Despite repeated complaints from DeFour about all the issues herein, defendant Haymes failed to act on or investigate any of the grievances.  DeFour alleges that he has reported all misconduct to Clarke, Holloway, Manis, White, Blevins and Robinson, plus instances of misconduct that violated the rights of other prisoners, yet no action has been taken about the officers' regular abuse of inmates and failure to follow policy, nor have the cruel and unusual conditions of confinement been corrected.  These supervisory personnel, up to and including Clarke, have tacitly authorized the "corrupt abusive practices" by failing to do anything about the reports of misconduct.  (Compl. at ¶¶ 62–65.)

## II. Discussion

A.  <u>Standard of Review</u>

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint, considering the facts alleged to be true.  *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  The facts alleged must be sufficient for the court to infer that the defendant is liable if those facts are true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The motion should be granted only if the plaintiff is not entitled to judgment on the facts alleged.  The motion does not resolve factual disputes between the parties.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pro se complaints must be liberally construed and held to a less stringent standard than those drafted by an attorney.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, legal conclusions, labels and conclusory statements are not facts and will not save a claim that is not supported by facts.  *See Ashcroft*, 556 U.S. at 678–79.

Section 1983 provides a procedure for vindicating federal rights that have been conferred on individuals. *See Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000). To state a cause of action under § 1983, plaintiff must allege facts showing that a person, acting under color of state law, violated his rights under the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). In his response to the Motion to Dismiss, DeFour objects to the defendants' "attempts to put the treatment described . . . in separate categories," because the various acts alleged were all occurring simultaneously. (Plntf's Resp. to Mot. to Dismiss at 2, ¶ 6, Docket Item No. 35.) However, § 1983 does not create a cause of action allowing the plaintiff to allege whatever he wants. He must allege violation of recognized rights under the Constitution or federal law by a person acting under color of state law. Each recognized cause of action has its own elements of pleading and proof, which must be satisfied. Further, liability under § 1983 must be analyzed individually for each defendant. *See King v. Riley,* 76 F.4th 259, 269 (4th Cir. 2023). Accordingly, the court will address DeFour's complaint by examining the facts alleged against each defendant in support of each claim.

B. Conspiracy to Harass

DeFour alleges that all named defendants conspired to violate his constitutional rights. An essential element in any conspiracy is an agreement between the conspirators to do the wrongful act. *See Brown v. Angelone*, 938 F. Supp. 340, 346 (W.D. Va. 1996). This requires a meeting of the minds on a common purpose, in this case to violate a specific constitutional right. *See Brown*, 938 F. Supp. at 346. Although DeFour alleges that "All of the defendant's actions and

6

inactions were done as part of a campaign of harassment against me for my well known label as a law suit filer," (Compl. at ¶ 73), that is a conclusory statement. The facts alleged involve different defendants engaging in different conduct at different times over a one month period. The fact that multiple defendants may have engaged in different acts of unconstitutional behavior is not sufficient to show a unity of purpose. As a matter of law, DeFour has failed to state sufficient facts to support a conspiracy claim against any of the defendants.

C.  Retaliation

DeFour has tied his claims together with the allegation that all defendants were retaliating against him because of his reputation for writing grievances and complaints against corrections officers and for filing lawsuits. The right to be free from retaliation is a clearly established right and was at the time of actions alleged in the complaint. *See Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 544 (4th Cir. 2017). However, the Fourth Circuit has admonished that claims of retaliation must "be regarded with skepticism" because all discipline by prison officials is retaliatory "in the sense that it responds directly to prisoner misconduct." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). To state a cognizable claim for retaliation, a plaintiff must allege facts to show that (1) the plaintiff engaged in constitutionally protected First Amendment activity; (2) the defendant took an action that adversely affected that protected activity; and (3) a causal relationship between the plaintiff's protected activity and defendant's conduct. *See Booker*, 855 F.3d at 537.

DeFour's use of the grievance process and judicial system was and is protected First Amendment activity, the right to petition. An action adversely affects someone's protected activity if that action would likely deter a prisoner "of  ordinary

firmness" from exercising his First Amendment rights. *See Booker*, 855 F.3d at 537. Although DeFour has not been deterred, as pointed out by the defendants, person "of ordinary firmness" is an objective standard, and a reasonable factfinder could easily find that some — but not all — of the actions alleged by DeFour would deter a person of ordinary firmness from filing grievances and lawsuits. *See Jones v. Solomon*, 90 F.4th 198, 214 (4th Cir. 2024).

The third element of a retaliation claim requires the plaintiff to demonstrate that "there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) ("*Martin I*"). In 2020, the Fourth Circuit ruled that the burden-shifting framework set out in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), to evaluate causation in First Amendment retaliation claims in the employment context should be applied in reviewing prisoners' First Amendment retaliation claims. *See Martin v. Duffy*, 977 F.3d 294, 297, 299 (4th Cir. 2020) ("*Martin II*"). "That test allocates a prima facie burden to the plaintiff to show that his protected activity was 'a substantial or motivating factor' in the defendants' action." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (quoting *Martin II*, 977 F.3d at 301). "For a plaintiff to meet his prima facie burden of causation, he must show '(1) that the defendant[s were] aware of [his] engaging in protected activity' and (2) 'some degree of temporal proximity to suggest a causal connection.'" *Shaw*, 59 F.4th at 130-31 (quoting *Constantine*, 411 F.3d at 501). Conclusory assertions that a defendant acted with a retaliatory motive are not sufficient. *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). If the plaintiff presents a prima facie showing of causation, the burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity. *See Shaw*, 59 F.4th at 130.

1. Scott, Hall and Barnette

The final element, a causal relationship between the plaintiff's protected activity and the defendants' conduct, is where DeFour's factual allegations fall flat against Scott, Hall and Barnette.  The behaviors of Scott and Hall (denying DeFour some meals, recreation time and showers during the first week of his arrival at Red Onion and for weeks thereafter) and of Scott and Barnette (verbal threats and harassment) are alleged to have been retaliatory, because DeFour had a reputation for filing grievances and lawsuits.  Again, that is a conclusory allegation without factual backing, and conclusory statements are insufficient.  *See Ashcroft*, 556 U.S. at 678–79.  DeFour has not said anything to indicate that Scott, Hall, or Barnette, specifically, knew anything about DeFour's history of filing grievances and lawsuits, especially on the first day he arrived at the facility.  When one cannot show that they knew about DeFour's reputation, one certainly cannot infer that such knowledge motivated their behavior.  He has not alleged any statements from Scott, Hall, or Barnette to suggest that they even knew about grievances at prior facilities, much less that they held some animus against him because of the prior complaints.  The only fact he alleges is that, from the day of his arrival at Red Onion, he "was told by several staff that I will have a hard time because I have a reputation for filing lawsuits and complaints against officers." (Compl. at ¶ 22.)  He does not identify who made those statements, when they were made, where they were made, and who, if anyone, heard the statements besides himself.  That allegation is not enough to infer that Scott, Hall or Barnette were motivated by a desire to deter DeFour from filing grievances and complaints when they denied him meals, showers and recreation time or when they verbally harassed and made derogatory comments to him. Defour has not alleged that these retaliatory actions occurred in close proximity to any protected activity. The retaliation claims against Scott and Hall will be dismissed without prejudice.

The only retaliatory conduct alleged against Barnette is the verbal harassment and derogatory comments; verbal threats and harassment alone, unless they are "sufficiently specific and direct," are not adverse actions against a prisoner for the purpose of retaliation claims.   *Ofori v. Fleming*, No. 7:20cv00345, 2021 WL 4462922, at *10 (W.D.Va. Sept. 29, 2021) (citing *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D. N.Y. 2010)).   The retaliation claim against Barnette will be dismissed.

### 2. Bentley

DeFour alleges that defendant Bentley falsely wrote him a disciplinary charge for threatening bodily harm to defendant Miller, and that Bentley did so in retaliation for DeFour's exercise of his First Amendment right to file grievances and lawsuits. In support of this allegation, he states that Bentley, Miller, and another unidentified corrections supervisor approached his cell on September 19, 2022.   Bentley turned off his body-worn video camera and then told DeFour that he would "get his ass beat real good" and "be lucky to make [it] off Red Onion alive" if he continued complaining and writing staff up on Red Onion. (Compl. at ¶ 25.)   Miller added, "You're on Red Onion now, this ain't Buckingham, you'll see."  (Compl. at ¶ 26.) DeFour responded by saying he would write them up for threatening him.   Then, a little later, Bentley allegedly falsely charged him with threatening Miller with bodily harm during the interaction.   The substance of Bentley's statements and their temporal proximity to the disciplinary charge are sufficient to create an inference of retaliatory motivation. *See Martin II*, 977 F.3d at 303-04.   When a plaintiff alleges sufficient facts to show a prima facie retaliatory motive, even if the official action would otherwise have been proper, the burden shifts to the defendant to prove that the defendant would have taken the same action even without a retaliatory motive. *See Martin II*, 977 F.3d at 303–04.   If the charge is shown to be false, that will make

defendant's burden more difficult.   Thus, DeFour has sufficiently alleged a retaliation claim against Bentley for writing the disciplinary charge.

### 3. Miller

The claim against Miller for retaliation, however, is not sufficient.   Verbal threats alone, as noted above, are not adverse actions. *See Mateo*, 682 F. Supp. 2d at 434.   Miller's September 19 statement that "You're on Red Onion now, this ain't Buckingham, you'll see," if it can even be considered a threat, is exceedingly indirect.   A few days later, while on rounds with Assistant Warden Blevins, when DeFour tried to explain his position to Blevins, Miller interrupted, telling DeFour "it does not matter who you tell, either you stop your complaining or [you're] gonna have a real [rough] ride on Red Onion."   This statement is also insufficiently specific to be considered an adverse action against DeFour.

The only other retaliatory behavior alleged to be personally committed by Miller is that on September 28 — nine days after his earlier comment — Miller told a supervisor to make sure DeFour didn't eat today.   That direction was made in response to DeFour verbally intervening in a discussion between prison staff and another inmate.   At the next meal, DeFour says he received a paper bag with trash, rather than his normal religious diet.   Even if the instruction not to feed DeFour that day was caused by irritation over DeFour's history of filing complaints, missing a single meal is not an adverse action as defined for purposes of a retaliation claim. That DeFour continued filing complaints and lawsuits is some evidence that Miller's conduct did not have the tendency to chill DeFour's exercise of his rights, although that is not dispositive. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).   Compared to the alleged  retaliatory conduct of other defendants, as alleged by DeFour, missing a single meal is not likely to deter

a "person of ordinary firmness" from the exercise of First Amendment rights. Therefore, the retaliation claim against Miller will be dismissed.

### 4. Adams

DeFour alleges that Hearing Officer Adams demonstrated bias against him by allowing Officer Bentley to testify about his body camera footage but refusing to review the actual footage himself and refusing to allow DeFour to put it into evidence to show that Bentley had cut off the camera before threatening DeFour. DeFour introduced Bentley's written response to DeFour's grievance, in which Bentley apparently acknowledged cutting off his body-worn camera before talking to DeFour, and an affidavit signed by Bentley, which DeFour characterizes as Bentley swearing "under oath that he did <u>not</u> cut his body camera off." (Compl. at ¶¶ 36–37, emphasis in original.) However, Adams said he found no contradiction in the statements, providing further evidence of his bias, according to DeFour. [1] DeFour also alleges that Adams "testified for Bentley against policy." (Compl. at ¶ 34.)

DeFour asserts that Adams' bias, unfavorable evidentiary rulings and final adverse decision were all undertaken to retaliate against him for filing grievances. Being found guilty of a disciplinary charge is certainly an adverse event. *See Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023). Adams obviously knew that DeFour had filed a grievance against Bentley for not having his camera on, because Bentley's

---

[1] Bentley's affidavit states "There is no body cam footage of this incident as it occurred during unofficial rounds[,] and I am not required to record all interactions with inmates. . . . The body camera footage from September 19, 2022, has been reviewed and there is no indication I approached DeFour's cell and turned off my camera before speaking with him." Docket No. 27-4, at ¶¶ 6–7 in *DeFour v. Webber,* No. 7:22cv00379 (W.D. Va., filed Oct. 12, 2022). This court does not have a copy of Bentley's grievance response, but the statements in the affidavit alone could be interpreted as mutually inconsistent, but not necessarily so.

response to the grievance was offered into evidence.  DeFour's defense at the disciplinary hearing was that Bentley violated policy by turning off his body camera "because he wanted to disguise his threats to me, and he only wrote the charge on because I told him I would write him and Miller up, and he wanted to discredit me . . ." (Compl. at ¶ 35.)  Presumably, that means Adams was aware that DeFour had or may have also filed a grievance against Miller.

As evidence of Adams' alleged retaliatory motive, DeFour says that Adams told him a few days after the hearing — and after DeFour complained to the Warden that Adams was biased — "the sooner you realize where you're at the easier it will be on you." (Compl. at ¶ 39.)  The temporal proximity between the hearing and these statements is a "slender reed" on which to show causal relationship between DeFour's exercise of his First Amendment right to file grievances and the adverse disciplinary decision.  Nevertheless, it is close enough in time to create a prima facie inference of retaliation at this stage, shifting the burden to the defendant to show that his decision would have been the same even if DeFour had not filed complaints and grievances.  *See Shaw*, 59 F.4th at 130; *Martin II*, 977 F.3d at 303–04.  DeFour has stated a viable retaliation claim against Adams arising only from the hearing on Bentley's disciplinary charge against him.  DeFour also apparently claims that Adams retaliated against him in a second disciplinary hearing, alleging the false complaint against Officer Scott, but he has not provided any information about that hearing or its outcome, so the court cannot find that Adams took adverse action against DeFour at that time. That claim will be dismissed without prejudice.

5. Stanley, Shirks and Counts

DeFour reported the alleged sexual assault by Officer Scott to Intel Officers Stanley and Shirks, stating that he wanted to speak to the SIU and press charges. Shirks and Stanley refused to notify the SIU, thereby violating their own internal

policy.  DeFour filed a complaint against them for refusing to refer his case to the SIU.  Shirks then filed a disciplinary charge against DeFour for making a false accusation against an officer, stating that surveillance cameras in the pod confirmed that DeFour's allegations were untrue.  Shirks also stated that the PREA Analyst for the Western Region, later identified as defendant Counts, had reviewed the camera film footage and approved the disciplinary charge.  DeFour alleges that all three acted in retaliation.

The defense acknowledges that DeFour's allegations support a retaliation claim against Investigator Shirks for filing an allegedly false disciplinary charge against him, based on the allegation that the disciplinary charge was filed after DeFour filed a complaint against Shirks and Stanley, with the short time lapse creating a permissible inference of a causal relationship between DeFour's protected First Amendment activity and the adverse disciplinary charge.

However, as the defense notes, Stanley did not write a disciplinary charge against DeFour, nor has DeFour alleged any adverse conduct by Stanley after the complaint against him was filed.  To the extent that DeFour is alleging that Stanley's failure to report the alleged assault to the SIU was retaliatory, he has not alleged any facts from which such an inference may be drawn.  The claim is conclusory and unsupported, and the court will dismiss it.

Likewise, the allegation that Counts concurred in the disciplinary charges against DeFour for retaliatory reasons is completely devoid of supporting facts.  The mere fact that he does not like Counts's decision is insufficient to convert adverse action into retaliation.  The court also will dismiss this conclusory and unsupported claim.

6. Meade

DeFour alleges that Meade retaliated against him by refusing to accept DeFour's grievances at intake.  The allegation of retaliatory motive is unsupported by any factual allegations and is simply conclusory.  Further, refusing his grievances is not an action that adversely affects DeFour's exercise of his First Amendment rights.  The First Amendment guarantees a right of access to courts, not to prison grievance procedures.  *See Booker*, 855 F.3d at 541 (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)).  DeFour insinuates that denial of access to the grievance procedure interferes with his First Amendment right to access the court, but he does not say how his access has been damaged.  To the extent that DeFour believes that his civil rights cases will be dismissed for failure to exhaust administrative remedies if he cannot access the grievance procedure, the United States Supreme Court has interpreted the mandatory exhaustion requirement of 42 U.S.C. § 1997e(a), based on its clear language, to require exhaustion of *available* remedies.  *See Ross v. Blake*, 578 U.S. 632, 642 (2016).  The court specifically noted that administrative remedies are unavailable if prison administrators "thwart inmates from taking advantage of a grievance process," whether through obfuscation, intimidation, or otherwise.  *See Ross*, 578 U.S. at 644.

In this case, DeFour has successfully filed several complaints and grievances, and clearly, he had access to file his complaint in this court. Further, he has alleged no actual injury or harm from Meade's actions.  A litigant must show specific harm or prejudice caused by interference with access to the court.  *See Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993).  The court will dismiss the claims against Meade for retaliation and interference with access to the courts.

15

7. Haymes

DeFour alleges that defendant Haymes, Director of the VDOC SIU, failed to investigate the misconduct he has reported to Haymes and failed to sanction prison staff for their misconduct, and that he did this to retaliate against DeFour for prior complaints against Haymes and other top administrators at VDOC. As with many of his retaliation claims, this is a naked assertion of retaliation without any factual support showing that Haymes had retaliatory intent. Without specific allegations from which one could reasonably infer retaliatory motive, the claim fails. Further, failure to investigate a grievance does not raise a constitutional issue. *See Hinton v. Mason*, No. 3:17cv526, 2018 WL 1763520, at *5 (E.D. Va. Apr. 12, 2018) (unpublished), *aff'd per curiam,* 732 F. App'x 204 (4th Cir. 2018) (unpublished). This claim against Haymes will be dismissed.

D. Supervisory Liability

DeFour alleges that administrators and supervisors, specifically Warden White, Assistant Warden Blevins, Major King, VDOC Director Clarke, Robinson, Manis, Holloway and Haymes are liable for all constitutional violations committed by the other defendants, including the alleged retaliation claims, because they created an environment that promoted abusive practices and tacitly authorized all the conduct of which DeFour complains. Supervisory liability for constitutional violations is not premised on respondeat superior, but on "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries" inflicted on the prisoners in their custody. *See Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984). Again, DeFour recites the formulaic legal conclusion, but does not offer sufficient facts, in general, to state claims of supervisory liability against these administrators.

16

To state a claim for supervisory liability, a plaintiff must allege facts showing that (1) the individual supervisor had actual or constructive knowledge that his subordinate was engaging in conduct that posed a "pervasive and unreasonable risk" of constitutional harm to persons like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate that one could infer deliberate indifference to or tacit authorization of the improper conduct; and (3) a causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

To establish knowledge that an employee was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury, a plaintiff must allege specific facts showing that the employee's improper conduct is widespread or has occurred on multiple different occasions and that the supervisor knew or should have known about the behavior.  DeFour has pled only conclusory allegations:

- That there is a widespread problem of abuse, corruption and officer misconduct on Red Onion (Compl. at ¶ 40);
- That inmates with behavioral problems and inmates known for filing lawsuits and grievances are sent to Red Onion to be broken (Compl. at ¶ 40–41);
- That the named administrators and supervisors are "well aware" of the widespread abusive conditions (Compl. at ¶ 42); and
- That "all named administrators have also been made aware of the specific actions by Red Onion staff named in this suit and have done nothing." (Compl. at ¶ 43).

These talismanic recitations tell the court nothing.  DeFour had been at Red Onion only two months when he filed his Complaint.  DeFour does not allege what specific "abuse, corruption and officer misconduct" was "widespread." He also does not allege how the named supervisory defendants were "well aware" of the conduct.

17

DeFour does not say how these defendants are aware of all the actions he complains of in this suit, but even assuming they knew because of the grievances DeFour filed and this lawsuit, that does not establish that any of them had knowledge of constitutional violations by the officers *before* the actions allegedly taken against plaintiff. *See Shaw*, 13 F.3d at 799. Without prior knowledge, there can be no causal connection between the supervisors' action or inaction and the constitutional harms DeFour alleges he suffered.

Looking for specific facts alleged against White, Blevins, King, Manis, Holloway, Robinson, Haymes and Clarke, the court finds the following allegations.

Warden White determined DeFour's grievance about Bentley turning off his body-worn camera to be unfounded, stating that Bentley did not have to have the camera on because his rounds had been completed, and DeFour was not being disruptive.  (Compl. ¶ at 32.)  That is the only fact alleged against White.  That is insufficient to prove any element of supervisory liability, nor does his denial of the grievance violate DeFour's rights.  Although a prisoner may petition by complaint or grievance, he has no right to a specific outcome.  *See Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding that the right to petition protects only the right to address the government, but the government may refuse to listen or respond).  The claim against White will be dismissed.

Assistant Warden Blevins was alleged to have accompanied Miller on rounds a few days after Bentley had written charges against DeFour for threatening an officer.  DeFour stopped Blevins to complain that Bentley had turned his body-worn camera off while he was on rounds and that Bentley and Miller had threatened him.  Miller told DeFour to stop complaining or he would have a rough ride on Red Onion, apparently trying to disrupt the conversation between DeFour and Blevins.  Blevins said, "Hold on here[;] let's talk about the [b]ody [c]amera [p]olicy."  Miller interjected that Bentley was with him at the time, so he was not required to have his

18

body camera turned on.  Blevins said, "There you have it," and the conversation ended.  (Compl. at ¶¶ 28–31.)   Nothing in those facts establishes any element of supervisory liability, and the claim against Blevins will be dismissed.

DeFour alleges he told Major King that staff was not feeding him, allowing showers, or giving him his medication, to which King said "good."  This factual allegation shows notice of conditions that potentially posed an unreasonable risk of harm to DeFour, depending on details that have not been provided, such as what medication DeFour needed and the effects of not having it, as well as the number of meals missed and at what intervals.  King could have obtained those details, but neither questioned DeFour for specifics nor investigated otherwise.  He could be deemed to have constructive knowledge of details he ignored or turned a blind eye to.  By saying "good" when told of the deprivation of food and medication, one could infer deliberate indifference or tacit authorization. Nonetheless, DeFour still must allege facts showing a causal relationship between King's inaction and some constitutional injury to DeFour.  If there is no constitutional injury that King's action could have ameliorated, there can be no causal relationship, and the supervisory liability claim fails.

The only conditions of which King could have constructive knowledge of, according to the facts alleged, are denial of showers, meals, and medication.  DeFour has not shown a constitutional injury related to denial of meals and showers, either under a retaliation theory, discussed in the previous section, or under cruel and unusual punishment, to be discussed in the next section.   Denial of access to medication, if done with intent to retaliate for grievances, is sufficient to state a retaliation claim.  *See Thompson v. Clarke*, 633 F. App'x 207, 208 (4th Cir. 2016) (unpublished).  Denial of medication for treatment of a serious medical need can also can violate the Eighth Amendment prohibition of cruel and unusual punishment. *See Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. 2001) (unpublished).  DeFour

has neither identified the "staff" who withheld medication from him in his Complaint nor stated facts showing these unknown staff members had retaliatory motive. Further, he has not provided sufficient factual detail to show serious medical need. In sum, he has failed to show a constitutional injury that is causally related to King's inaction. Therefore, the court will dismiss the claim against King without prejudice.

The allegations against the remaining administrators and supervisors, Manis, Holloway, Robinson, Haymes and Clarke are the generic and conclusory allegations that these defendants were aware of the abusive conditions at Red Onion, without stating what conditions they were aware of and how they became aware. Conclusory allegations are insufficient to state a claim for relief. *See Ashcroft*, 556 U.S. at 678-79. That DeFour has made each of these defendants aware of his allegations, but they have done nothing, is also insufficient to state a claim for supervisory liability. Being made aware of an incident after the fact does not enable a supervisor to take any timely preventive action. A supervisor must be aware of conduct that is pervasive and creates an unreasonable risk of harm. As stated above, to be pervasive, the conduct must be widespread, or at least must have occurred on several different occasions. *See Slakan,* 737 F.2d 368, 373–74 (4th Cir. 1984). The conclusory allegation that they were "well aware" of conditions falls short of the factual, documented incidents required to show actual or constructive knowledge. Also, "abusive conditions" is a conclusory label that covers a wide swath of behavior, more than just behavior that creates an unreasonable risk of harm or constitutional injury. Finally, there must be a causal link between the supervisor's "continued inaction in the face of documented widespread abuses" and the constitutional harm suffered by the plaintiff. *Slakan,* 737 at 373. This simply means that the constitutional injury suffered by the plaintiff must be created by the risk that the supervisor ignored. For these reasons, DeFour has not stated a viable claim for supervisory liability against

Manis, Holloway, Robinson, Haymes, or Clarke, and the court will dismiss the claims against them.

E.  Cruel and Unusual Punishment

DeFour alleges that his Eighth Amendment right to be free of cruel and unusual punishment was violated in multiple ways: missed meals, showers, recreation and medication; verbal threats; lack of cleaning supplies for sink and toilet; insufficient amount of clean clothes; one month in segregation; two false disciplinary charges; denial of grievance forms; denied access to canteen; and subjected to derogatory comments, sexual harassment and sexual assault.  To make a claim that prison living conditions constituting cruel and unusual punishment, a plaintiff must allege facts showing (1) the objectively serious deprivation of a basic human need and (2) subjectively deliberate indifference to the condition by prison officials.  *See Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993).   If the prisoner has not suffered serious physical or psychological injury or a substantial risk thereof, then the condition is not sufficiently serious to constitute cruel and unusual punishment.  *See Strickler,* 989 F.2d at 1381.   Deliberate indifference requires the prison official to know of the condition and disregard it.  *See Harvey v. Large*, No. 7:15cv00401, 2018 WL 1370864, at *5 (W.D. Va. Mar. 16, 2018).  If the harm is sufficiently severe, the officer's subjective knowledge of the condition may be inferred.  Prison conditions violate the Eighth Amendment only when they exceed contemporary bounds of decency.  DeFour's claims will be measured against these criteria.

1. <u>Meals, Showers and Recreation</u>

DeFour asserts that Officers Scott and Hall denied him meals, recreation, and showers "several times."  He does not allege any serious physical injury or pain, and his allegations of missed meals lack specificity.  In the absence of serious injury, courts have routinely held that missing meals does not constitute cruel and unusual punishment.  *See White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993) (holding that receiving only two meals per day on weekends and holidays does not rise to the level of cruel and unusual punishment); *Harvey*, 2018 WL 1370864 at *5 (holding that missing two meals in a 22-hour period did not create a serious risk of significant injury and noting that "mere hunger or physical weakness is not a significant physical injury.").  DeFour's allegations are insufficient to raise a claim of cruel and unusual punishment for missing meals "several times" in a week.

The claim against Miller for directing that DeFour not be fed on September 28, 2022, when DeFour then received a bag of trash for lunch, similarly is insufficient.  DeFour only missed a single meal at Miller's direction, and he suffered no serious injury or risk of significant injury.

DeFour's claims for being deprived of showers "several times" per week also are insufficient.  Courts have held that fewer showers than one would prefer, in the absence of serious injury or substantial risk thereof, do not violate the Eighth Amendment.  *See Alexander v. Parks*, No. 7:17cv00524, 2019 WL 346425, at *12 (W.D. Va. Jan. 28, 2019) (holding that 11 days without a shower was not cruel and unusual punishment); *Johnson v. Fields*, No. 2:14-cv-38-FDW, 2017 WL 5505991, at *10 (W.D. N.C. Nov. 16, 2017) (holding that 12 days without a shower was not cruel and unusual punishment).

Complete deprivation of out-of-cell exercise for a prolonged time, without penological justification, violates the Eighth Amendment.  *See Mitchell v. Rice*, 954 F.2d 187, 191-92 (4th Cir. 1992) (holding that 18 months of in-cell confinement,

except when shackled for a shower two times per week, is presumptively cruel and unusual and remanding case to trial court for detailed review of necessity for such confinement and feasibility of alternatives).  DeFour's claimed loss of out-of-cell recreation does not meet this threshold.  Losing recreation time "several times" each week implies that DeFour received recreation time other days of the week.  The Fourth Circuit has recognized that restriction to two periods of exercise per week might not violate the Eighth Amendment if the restriction is for a relatively short duration, but if extended over a period of years, the ruling could be quite different. *See Sweet v. S.C. Dep't of Corrs.*, 529 F.2d 854, 866 (4th Cir. 1975) (en banc), *abrogated on other grounds by Porter v. Clarke*, 923 F.3d 348, 361 (4th Cir. 2019). Considering the totality of the circumstances, longer periods without outdoor recreation have been found not to state a claim for cruel and unusual punishment. *See Alexander,* 2019 WL 346425, at *12 (granting summary judgment to defendants on Eighth Amendment claim for 45 days without access to outside recreation).

For these reasons, the Eighth Amendment claims against Scott and Hall for denial of meals, showers and recreation will be dismissed without prejudice.  The claim against Miller for a single denied meal also will be dismissed.

### 2.  Verbal Threats, Harassment and Derogatory Comments

DeFour alleges that Scott, Barnette, Bentley, Miller and King threatened him. Scott and Barnette allegedly made derogatory comments and verbally sexually harassed him, though he does not say what harassing statements were made, other than that they called him a female dog.  Threats and verbal abuse by prison officials, without more, do not state a constitutional claim. *See Henslee v. Lewis*, 153 Fed. App'x 178, 180 at *2 (4th Cir. 2005) (unpublished per curiam).  Nor does verbal sexual harassment alone also does not rise to the level of an Eighth Amendment

violation.  *See Jackson v. Holley*, 666 Fed. App'x 242, 244 (4th Cir. 2016) (unpublished).  This, these claims will be dismissed.

### 3.  Sexual Assault

After "weeks"[2] of sexual harassment by Scott, DeFour asserts that on October 3, Scott squeezed DeFour's buttocks and said his cheeks were soft and sweet.  Such an unwanted and unwelcome incident clearly constitutes an assault under common law tort principles.  Whether the alleged facts are serious enough to constitute a constitutional violation is not as clear, but the defense has not moved to dismiss this particular claim.  As with any other claim of cruel and unusual punishment, a plaintiff claiming sexual abuse or sexual assault must allege facts showing that the condition complained of is objectively sufficiently serious, by causing or being likely to cause significant physical or psychological injury, and that the prison official subjectively acted with deliberate indifference to the inmate's safety by disregarding the known risk of injury.  *See Thorpe v. Clarke*, 37 F.4th 926, 933 (4th Cir. 2022).

There is no doubt that "sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation."  *Jackson*, 666 F. App'x at 244.  However, "not every malevolent touch by a prison guard gives rise to a federal cause of action."  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal quotation marks omitted).  In *Jackson,* the first and only Fourth Circuit case to address the issue, the court held that plaintiff's allegations were insufficient to amount to an Eighth Amendment violation.  *See* 666 Fed. App'x at 244.  The defendant, J. Holley, was a staff psychologist at Maury Correctional Institution in North Carolina.  Jackson alleged that Holley sent him a sexually

---

[2] On October 3, DeFour had been at Red Onion slightly less than three weeks.

explicit letter, posed seductively for him while whispering sexually explicit words in his ear, and planted her groin in his face while he was seated in the barber's chair waiting for his haircut. *See Jackson,* 666 F. App'x at 244. Scott's alleged conduct in this case certainly is no worse than Holley's.

The Second Circuit Court of Appeals, one of the earliest circuits to address sexual abuse by a corrections officer as an Eighth Amendment violation, reached a similar decision in *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). In *Boddie*, a female corrections officer made a verbal pass at the plaintiff. The next day, she squeezed his hand, stroked his penis and said, "[Y]ou know your [sic] sexy black devil, I like you." *Boddie,* 105 F.3d at 860. About two weeks later, she stopped him in the hall when he passed her office and then bumped into his chest so hard that he could feel the points of her nipples against his chest. When he passed her office again on his return, she bumped him again with her whole body, pinning him to a door while pressing her crotch against his penis. While acknowledging that her conduct could be the basis of a state tort action, the court held that the incidents, individually or cumulatively, were not severe or egregious enough to meet the objective criteria of serious harm required to state a federal constitutional claim. *See Boddie*, 105 F.3d at 861.

In 2015, the Second Circuit addressed the issue again. Noting that the court was applying the same standard set forth in *Boddie*, requiring an objective and sufficiently serious condition and subjective deliberate indifference, the court reached a different conclusion. *See Crawford v. Cuomo*, 796 F.3d 252, 258-59 (2d Cir. 2015). In *Crawford*, the defendant corrections officer squeezed and fondled Crawford's penis during a pat-down search, making demeaning comments as he did so. Finding these allegations sufficient to state an Eighth Amendment claim, the court reasoned that analysis of an Eighth Amendment claim is context specific, and determining what conduct is "repugnant to the conscience of mankind" and,

therefore., serious enough to meet the objective standard of constitutional injury, requires courts to look to "the evolving standards of decency that mark the progress of a maturing society." *Crawford,* 796 F.3d. at 258, 259 (citation omitted). Conduct that did not rise to the level of a constitutional violation 18 years earlier, in 1997, might not comply with community standards today, and, therefore, would be sufficient to state a claim today. The court noted that "we believe that the officer's conduct in *Boddie* would flunk its own test today." *Crawford,* 796 F.d at 260.

In the 7.5 years since the Fourth Circuit decided *Jackson*, standards have continued to evolve. In October 2017, the New York Times published the investigation by Jodi Kantor and Megan Twohey about women sexually abused by producer Harvey Weinstein. A week later, actress Alyssa Milano's tweet, #MeToo, a phrase coined by community activist Tarana Burke, went viral on social media, prompting a social movement against sexual abuse and sexual harassment. The movement led to prosecutions of several prominent men, including Bill Cosby, Jeffrey Epstein and Dr. Larry Nassar, as well as changes in some state statutes of limitations to allow victims to pursue civil suits against abusers. Amy Brittain, *Me Too Movement*, ENCYCLOPEDIA BRITANNICA (March 21, 2024), https://www.britannica.com/topic/Me-Too-Movement (last visited March 27, 2024). Given the direction of this cultural change, and the defendants' apparent acquiescence that DeFour has sufficiently alleged this Eighth Amendment claim against Officer Scott, the sexual assault charge will not be dismissed at this stage.

4. <u>False Disciplinary Charges</u>

DeFour's claims regarding false disciplinary charges filed by Bentley and by Shirks are proceeding as retaliation claims as previously discussed. Absent a showing of retaliation, false disciplinary charges alone cannot serve as the basis of

a constitutional claim.  *See Cole v. Holloway*, 631 Fed. App'x 185, 186 (4th Cir. 2016). These claims will be dismissed.

### 5.  Denial of Grievance Forms and Access to Grievance Procedures

DeFour alleges that Meade has refused to provide him with grievance forms and has refused to accept his grievances at intake.  The Constitution creates no right to grievance forms nor to access to grievance procedures, even when the state has voluntarily established grievance procedures. *See Adams*, 40 F.3d at 75.  Therefore, denying grievance forms does not constitute cruel and unusual punishment. This claim will be dismissed.

### 6.  Remaining Allegations of Cruel and Unusual Punishment

In paragraph 50, DeFour summarizes every claim alleged throughout the Complaint, and he mentions some that are not discussed elsewhere.  The claims that have been elaborated on elsewhere in the Complaint have been (or will be) addressed in other sections.  Here, I will note conditions of confinement allegations summarily thrown into paragraph 50 that do not state valid claims: One month in segregation, lack of cleaners to remove excrement from his sink and toilet, insufficient clean clothes, denial of canteen and unspecified denial of medication.   The biggest problem with these claims is that he has not identified the persons responsible. Liability under § 1983 is personal.  A plaintiff can pursue a *person* acting under color of state law who violates constitutional rights.  A plaintiff can recover only from the person or persons directly and personally responsible for violating his rights.  *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  When no facts are provided regarding who committed the alleged violations, there can be no liability.

As discussed under the claim against King for supervisory liability, denial of medication can constitute cruel and unusual punishment if there is an objectively

serious need for the medication.  *See Harden*, 27 F. App'x at 178.  Not only has DeFour failed to identify the persons individually responsible for denying him his medication, he also has not alleged facts showing that denial of the medication creates a serious risk of significant injury.

The allegation that he lacked "sufficient" clean clothes to wear while other clothes were in the laundry is totally lacking in detail. DeFour has not alleged what clothing was needed or what clothing he was denied. He has also not alleged who personally prevented him from getting clothing or how long he waited to get clothing. Even if DeFour provided detailed answers to these questions, that would not necessarily be sufficient to show an Eighth Amendment violation.  Courts have routinely held that wearing dirty clothes, though unpleasant, is not a deprivation serious enough to support an Eighth Amendment claim.  *See, e.g., Johnson*, 2017 WL 5505991 at *10 (holding that 12 days without clean laundry is not cruel and unusual); *Walker v. Dart*, No. 09cv1752, 2010 WL 669448, at *4 (N.D. Ill. Feb. 19, 2010) (holding that denial of clean clothes for more than two weeks is not cruel and unusual); *Moss v. DeTella,* No. 96C5398, 1997 WL 24745, at *2 (N.D. Ill. Jan. 16, 1997) (holding that no clean clothes for 111 days is not cruel and unusual); *Coughlin v. Sheahan*, No. 94C2863, 1995 WL 12255, at *3 (N.D. Ill. Jan. 12, 1995) (holding that getting clean clothes once every three months was not cruel and unusual).

DeFour also alleges lack of access to canteen privileges.  He does not state why he has lost access and he does not say who has deprived him of access.  Even if he did, loss of canteen privileges is not shocking to the conscience of the court nor contrary to the evolving standards of decency in society.  Accordingly, loss of canteen privileges does not rise to the level of a constitutional claim for cruel and unusual punishment.  *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984).

DeFour's complaint that he was not given cleaning supplies to clean the human excrement on his sink and toilet also fails to state an Eighth Amendment

claim.  Short-term sanitation problems, though unpleasant, do not amount to constitutional violations.  *See Harris v. Connolly*, No. 5:14-cv-128-FDW, 2016 WL 676468, at *5 (W.D. N.C. Feb. 18, 2016).  Extreme deprivations are required to support a conditions of confinement claim.  *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992).  To show extreme deprivation, a plaintiff must show a serious physical or emotional injury resulting from the challenged conditions.  *See Strickler*, 989 F.2d at 1381.  DeFour has not alleged serious physical or psychological injury from the lack of cleaner for his sink and toilet,  nor has he alleged how long he was exposed to the unsanitary condition, whether he reported the condition to anyone, and whether he asked for cleaner.  These issues are important contextual facts needed to support his claim.  *See Harris*, 2016 WL 676468 at *5.  Even if he provided all that information, on the facts currently available, his claim would not reach the level of a constitutional violation.  In *Harris*, the plaintiff was in a holding cell for 45 days with urine, feces and vomit on the floor and walls, and he was provided no sanitary items.  Noting that living conditions in prison are often less than ideal, the court found no Eighth Amendment violation.  *See Harris,* 2016 WL 676486 at *5.

DeFour complains that he was in solitary confinement for a month upon his arrival at Red Onion.  He considers the living conditions there to be cruel and unusual.  In segregation, he has limited access to canteen, a small cell, limited possessions and limited showers.  "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Only extreme deprivations violate the Eighth Amendment.  The conditions DeFour describes, although unpleasant, are not unusual for a prisoner being confined in segregation.  *See Alexander v. Collins,* No. 7:19cv00261, 2021 WL 1541033, at *10 (W.D. Va. Apr. 20, 2021) (holding that plaintiff failed to state a claim for cruel and unusual punishment based on confinement in the segregation unit from April 2017 through

December 2018 and continuing).  Living conditions in prison are often less than ideal, and inmates "cannot expect the amenities, conveniences, and services of a good hotel."  *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988).

In paragraph 76, DeFour states that all the defendants subjected him to cruel and unusual punishment because of all the unconstitutional conditions alleged.  Such an allegation fails to state any claim under § 1983.  Liability under § 1983 is personal, based upon each defendant's personal violations of a plaintiff's constitutional rights.  *See Trulock*, 275 F.3d at 402.  Even supervisory liability is based on the supervisor's own conduct of ignoring a known or obvious risk; it is not based on responsibility for the acts of employees or others.  Even considering all alleged unpleasant conditions in combination, the conditions do not constitute an extreme deprivation resulting in serious injury.  That being the case, all claims for cruel and unusual punishment will be dismissed.

### F.  Due Process

#### 1.  Adams

DeFour alleges that Hearing Officer Adams violated his right to due process under the Fourteenth Amendment because he was biased against DeFour and refused to allow or require the introduction of Bentley's body-worn camera video into evidence at the hearing for threatening Officer Miller.  He has alleged that Adams also violated his due process rights at the second hearing, on the charge of filing a false complaint against Officer Scott, but he has not stated any facts in support of that allegation.

The Fourteenth Amendment prohibits a state from depriving an individual of life, liberty, or property without due process of law.  *See* U.S. CONST. amend. XIV.  The first step in any due process challenge, then, is to determine whether the plaintiff

has been deprived of a protected liberty or property interest. *See Robinson v. Creasey,* No. 5:07-cv-00347, 2009 WL 1073642, at *3 (S.D. W.Va. Apr. 21, 2009) (citation omitted). Only if the plaintiff has been deprived of a protected liberty interest does the court get to the second step, determining if the procedures provided the appropriate due process protection. *See Robinson,* 2009 WL 1073642 at *3.

In determining whether a protected liberty interest exists, the court examines the nature of the interest. For prisoners serving a custodial sentence, the interest is "in the nature of a liberty interest" if its deprivation (1) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) inevitably affects the duration of the inmate's sentence. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Many, if not most, penalties imposed following prison disciplinary hearings do not affect a protected liberty interest, because they do not automatically and inevitably increase the length of the inmate's sentence (in contrast to a new criminal conviction, which would increase a sentence) and they do not impose significant hardship over and above those already contemplated by the original sentence to prison. *See, e.g., Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (noting that prisoners have no liberty interest in privileges, such as telephone or canteen access); *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (finding no constitutional liberty interest in an inmate's security classification); *Sandin*, 515 U.S. at 486 (holding that inmates have no liberty interest in avoiding disciplinary segregation); *Robinson*, 2009 WL 1073642 at *12 (finding inmate has no liberty interest in maintaining his prison employment).

DeFour has not alleged what deprivation he suffered because of either disciplinary hearing before Hearing Officer Adams. Without knowing what penalties were imposed, the court cannot determine if any liberty interest existed. Without deprivation of a liberty interest, there is no right to due process protection.

Thus, DeFour has failed to allege a viable due process claim. The court will dismiss these claims without prejudice.

### 2. PREA Analyst Counts

DeFour alleges that Counts violated his due process rights by approving Shirks' disciplinary charge against DeFour for filing a false claim against Scott. This claim is frivolous. DeFour has no constitutionally protected interest in which officers are involved in deciding whether to file a charge. His only due process interest is in having the opportunity to present his side of the story at a hearing once charges have been filed and before guilt or innocence is determined. The court will dismiss this claim.

### G. Equal Protection

DeFour alleges that Haymes violated DeFour's equal protection rights by refusing to investigate and sanction staff for the misconduct that DeFour reported to him. To state an equal protection claim, a plaintiff must plead facts to show (1) that he has been treated differently from others with whom he is similarly situated and (2) that the unequal treatment was due to intentional or purposeful discrimination. *See Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). While factual allegations are accepted as true, conclusory recitations of the elements are not facts and need not be accepted at all.

The sole facts stated in support of this equal protection claim are set forth in the Complaint: "Paul Haymes refusal to investigate and sanction staff for their misconduct . . . violated the Equal Protection Clause as his job is to investigate misconduct and he regularly does this for other inmates with no evidence to support their claims . . ." (Compl. at ¶ 75.) He further alleges that Haymes' refusal to

investigate and sanction the officers is because of DeFour's prior complaints against Haymes and other VDOC top administrators, as discussed in the retaliation claims previously.   These allegations are not facts, but vague conclusory statements parroting the elements of an equal protection claim without providing available facts to support the conclusion.  The claim of retaliation as the reason for discrimination is equally conclusory.  The Complaint does not plead a plausible equal protection claim.   Further, even if he provided detailed factual support for his claimed discrimination, failure to investigate a complaint or a grievance is not a claim of federal constitutional dimension.  *See Hinton*, 2018 WL 1763520 at *5.  This claim will be dismissed.

## H. RLUIPA and Free Exercise of Religion

DeFour alleges that Scott and Hall, by failing to provide him all meals, violated his right to religious freedom under the First Amendment and under the RLUIPA, because his meals are sealed religious diets.  He provides no information about his religious beliefs and dietary practices to explain how failing to deliver the meal interferes with the exercise of his religion.[3]  Under both the First Amendment and RLUIPA, a practice burdens the free exercise of religion if it puts pressure on a person to modify his behavior and violate his beliefs.  *See Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006).  Without factual detail to explain his religious beliefs and how not receiving any meal pressures him to violate those beliefs, he fails to state a plausible claim under either legal theory.  The court will dismiss the free exercise of religion claims without prejudice.

---

[3] By his allegations, Scott and Hall did not deliver any meal to him; this is not a situation where they delivered him a meal of forbidden food instead of the religious diet he requested.

I. <u>PREA</u>

The remaining claims allege that defendants Scott, Shirks, Stanley and Counts violated DeFour's rights under the PREA by doing the following:  Scott, by sexually assaulting DeFour; Shirks and Stanley, by refusing to report the assault to SIU; and Shirks and Counts, by charging DeFour with filing a false complaint.  Notably, DeFour does not say which provisions of the PREA were violated by the defendants' conduct.

For more than a decade, courts have held that there is no private cause of action under § 1983 to enforce a PREA violation.  *See, e.g., Chapman v. Willis*, No. 7:12-cv-00389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013).  Section 1983 does not create rights; rather, the Act provides the means for enforcing federal rights granted elsewhere.  *See Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000).  Unless the text and structure of a statute indicate congressional intent to create a new private right of action, the statute cannot be the basis for a private suit under either an implied right of action or § 1983.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002).  Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for failure to comply with the Act's provisions.  *See Chapman*, 2013 WL 2322947 at *4.

Congress enacted the PREA to address the problem of rape in prison.  The Act created a commission to study the problem and authorized grant money to help prisons raise awareness and implement better prevention policies.  The statute does not grant specific rights to prisoners.  *See Chapman,* 2013 WL 2322947 at *4.  Because inmates do not have a private right of action under PREA, the PREA claims against Scott, Shirks, Stanley, and Counts will be dismissed.

34

### III. Conclusion

For the reasons stated, the court will grant in part and deny in part the defendants' Motion to Dismiss. (Docket Item No. 26.)  An appropriate order will be entered.

**ENTERED:**  March 28, 2024.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE